**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:16-cv-81669-KAM**

**Judge Kenneth A. Marra**

| | |
|---|---|
| **ELECTRONIC COMMUNICATION TECHNOLOGIES, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MINTED, LLC,**<br>**Defendant.** | **PATENT CASE**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MINTED, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW**

Over two years ago, a United States district court found claims from the same patent family as the sole patent asserted here to be invalid under 35 U.S.C. § 101 for claiming patent ineligible subject matter, and ECT dropped its appeal of that decision. Claim 11 of the '261, the only asserted claim in this action, deserves the same fate. Claim 11 is materially indistinguishable from ECT's claims that were invalidated in *Eclipse IP, LLC v. McKinley Equip. Corp.*, No. 8:14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014), as constituting nothing more than abstract ideas with no inventive concept. The '261 Patent claims priority to the patents invalidated in *McKinley*, and Claim 11 is directed to substantially the same abstract idea as those patents (i.e., enabling parties to communicate regarding a tracked item). Further, like those patents, it includes no inventive concept or meaningful limitations that would amount to significantly more than the abstract idea itself.[1] Claim 11 merely claims the end result of an automated notification system that is not limited to a specific non-conventional mechanism for achieving that result, instead cobbling together

[1] In its Amended Complaint, ECT has alleged infringement of only Claim 11 of the Asserted Patent. (Dkt. No. 22, ¶ 24.) Accordingly, this Motion focuses on the sole asserted claim. However, as ECT has not yet served its infringement contentions, Minted reserves the right to challenge other claims more extensively if and to the extent ECT later asserts additional claims.

generic computer components to achieve the claimed idea. Therefore, Claim 11 is invalid for failure to claim patent-eligible subject matter.

As in *McKinley*, resolving these issues does not require discovery or formal claim construction. Therefore, to avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Minted requests that the Court find Claim 11 ineligible for patenting and dismiss the Amended Complaint with prejudice.

## I. STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under § 101, absent an inventive concept or meaningful limitations on the application of the abstract idea. Claim 11 is directed to the abstract idea of enabling parties to communicate regarding a tracked item. Claim 11 does not include an inventive concept or meaningful limitations. Should the Court therefore dismiss ECT's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim?

## II. BACKGROUND

On September 4, 2014, the United States District Court for the Central District of California issued an order invalidating the asserted claims of three of Plaintiff Electronic Communication Technologies, LLC's (known then as Eclipse IP, LLC) patents: U.S. Patent Nos. 7,064,681; 7,113,110; and 7,119,716 (collectively, the "*Eclipse* Patents"). *McKinley*, 2014 WL 4407592, at *1. The court found that all the asserted claims were directed to patent-ineligible subject matter. *Id.* at *12. In particular, the court found the '681 Patent was "directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else." *Id.* at *7. The court found that the '716 Patent was "directed to the abstract idea of asking someone to do a task, getting an affirmative response, and then waiting until the task is done, 'while adding the words apply it with a computer.'" *Id.* at *9 (some internal quotation marks omitted). The court also found the '110 Patent was directed "to the abstract idea of asking people, based on their location, to go places." *Id.* at *11. The court further found that none of the claims included any "inventive concept." *See id.* at *7-11. The court therefore dismissed ECT's complaint. After initially pursuing an appeal of that decision, ECT voluntarily dismissed the appeal two weeks after it was docketed.

On September 30, 2016, ECT filed this lawsuit against Defendant Minted, LLC ("Minted"), alleging infringement of three patents, including U.S. Patent No. 9,373,261 (the "'261

Patent" or "Asserted Patent").[2] All three patents are closely related to, result from essentially the same specification of, and are materially indistinguishable from the *Eclipse* Patents. (Dkt. No. 1 at 2-4.) Indeed, ECT's patents initially asserted in this case all claimed priority to the *Eclipse* Patents. On November 22, 2016, Minted filed a Rule 12(b)(6) motion to dismiss ECT's Complaint, challenging the eligibility of all three patents under § 101. (Dkt. No. 17.) On December 19, 2016, ECT filed an Amended Complaint, which rendered moot the original Complaint.[3] ECT's Amended Complaint limits the infringement allegations to Claim 11 of the Asserted Patent.[4] In its Amended Complaint, ECT alleges that Minted infringes by "us[ing] an automated order confirmation and shipment ('automated notification') to send customers updated shipment information when products are being prepared for picked up and when products are shipped." (Dkt. No. 22 at 5.)

The '261 Patent, entitled "Secure Notification Messaging with User Option to Communicate with Delivery or Pickup Representative," is generally directed to "systems and methods that notify a party of travel status associated with one or more mobile things (MTs)." '261 Patent at 1:50-51. The '261 patent issued on June 21, 2016, with three independent claims and 27 dependent claims. Independent Claim 11, which is representative of the claims of the Asserted Patent and the only claim asserted in this case, covers nothing more than the abstract idea of enabling parties to communicate regarding a tracked item and includes language relating only to generic computer hardware and software:

> An automated notification system, comprising:
> one or more transceivers designed to communicate data;
> one or more memories;
> one or more processors; and
> computer program code stored in the one or more memories and executed by the one or more processors, the computer program code comprising:
> code that enables a first party associated with a personal communication device (PCD) to input or select authentication information for use in

---

2 At least four (4) other ECT-initiated actions involving the Asserted Patent are presently pending in this District: (1) *ECT v. Lakeshore* (No. 9:16-cv-81672-KAM); (2) *ECT v. Pep Boys* (No. 9:16-cv-81676-KAM); (3) *ECT v. Shopperschoice.com* (No. 16-cv-81677-RLR/JMH); and (4) *ECT v. Clever Athletics Co.* (No. 9:16-cv-81446-WPD).

3 *See Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

4 ECT also filed a response to Minted's motion to dismiss. (Dkt. No. 24.) However, because the Amended Complaint renders the original Complaint moot, Minted does not intend to reply to ECT's December 19, 2016 response.

> connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT);
>
> code that causes storage of the authentication information;
>
> code that monitors location or travel information in connection with the MT;
>
> code that causes initiation of the notification communication session to the PCD with the one or more transceivers, in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT;
>
> code that, during the notification communication session, provides the authentication information to the PCD that indicates to the first party that the notification communication session was initiated by an authorized source; and
>
> code that, during the notification communication session, enables the first party to select whether or not to engage in a communication session with a second party having access to particulars of the pickup or delivery.

*Id.* at Claim 11.

Like the related *Eclipse* Patents, Claim 11 recites only general purpose computer components programmed in a conventional way to perform the claimed abstract idea. Specifically, the '261 Patent's claims refer only to "an automated notification system." '261 Patent at Claims 1, 11, 21. And while ECT characterizes the functionality of the asserted claim as "notifying customers when products are being prepared for picked up and when products are shipped," the '261 Patent is written in much broader terms. Indeed, a "mobile thing (MT)" is not limited to a purchased product as ECT contends, but could be anything like "a bus, automobile, truck, train, ship, plane, aircraft, etc." *Id.* at 1:53-59. Likewise, a "personal communication device" can be "a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (*e.g.*, cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, ***or any other device capable of notifying the user with some type of user perceptible emission***." *Id.* at 19:35-41 (emphasis added). These terms refer to generic, conventional means capable of use to implement abstract ideas. The claim is thus ineligible for patentability under § 101.

Therefore, the Court should grant this Motion pursuant to Rule 12(b)(6) and dismiss ECT's Amended Complaint for failure to state a claim upon which relief can be granted.

## III. LEGAL STANDARD

### A. This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); *see Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (noting that generally courts "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6)]").

Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Iqbal*, 556 U.S. at 678 (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations and internal quotations omitted). Thus, "resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).

### B. Patent-eligibility is a threshold legal issue, and therefore, the clear-and-convincing standard is inapplicable.

Patent eligibility under § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial*, 772 F.3d at 718-19 (Mayer, J., concurring). Claim construction is not required in order to conduct a § 101 analysis. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,

687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

The presumption of validity does not apply to patent ***eligibility***. *Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016) ("To be clear: ruling these claims to be ***patent-eligible*** does not mean that they are ***valid***; they have yet to be tested under the statutory conditions for patentability, *e.g.*, §§ 102 (novelty) and 103 (non-obvious subject matter), and the requirements of § 112 (written description and enablement) . . . ." (emphasis added)). The clear-and-convincing burden of proof applies only to disputed factual issues and is thus irrelevant to matters of law. Consequently, the clear-and-convincing standard is inapplicable in a § 101 *legal* determination raised at the pleading stage, particularly since any disputed facts are construed in the light most favorable to the plaintiff.[5] *Berkheimer v. Hewlett-Packard Co.*, No. 12 C 9023, 2016 WL 7188159, at *4 (N.D. Ill. Dec. 12, 2016, Memorandum Opinion and Order) ("Having considered the positions on both sides of this issue, the Court is persuaded that the clear-and-convincing standard has no role to play in the § 101 determination at issue in this case"); *see also Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, *2 (D. Del. Sept. 30, 2015, Report and Recommendation) ("And as to the instant Motions, filed at the pleading stage (a stage at which any facts that might be in dispute are to be construed in the light most favorable to the plaintiff), the 'clear and convincing' standard of proof should not come into play at all.").

**C. The law of 35 U.S.C. § 101**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law specifically recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis

---

[5] In ECT's response to Minted's original motion to dismiss, it does not raise any claim construction issues that would preclude the *legal* determination of whether the '261 Patent is drawn to patent-ineligible subject matter. (*See generally* Dkt. No. 22, Amended Complaint; Dkt. No. 24, Response in Opposition to Minted's Motion to Dismiss.) *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15 CV 1002, 2015 WL 6870118, at *2 (N.D. Ohio Nov. 6, 2015) ("As an initial matter, the Court finds that it is procedurally proper to address defendant's arguments concerning invalidity based on patent-eligibility at the 12(b)(6) stage. This is especially so in light of the fact that plaintiff does not argue that claim construction is necessary for a resolution of the instant dispute." (citation omitted)), *aff'd*, No. 2016-1286, 2016 WL 7156894 (Fed. Cir. Dec. 8, 2016).

added). "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

Determining whether a patent claim impermissibly claims an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains such an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). The analysis requires, especially during the first step, that the claim at issue be compared to claims with a "similar or parallel descriptive nature" that have been analyzed in previous cases. *Amdocs*, 841 F.3d at 1295 ("We begin, then, with an examination of eligible and ineligible claims of a similar nature from past cases."). This is known as the "classic common law methodology." *Id.* at *5.

Transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). In the context of computer-related technology, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *see also MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118, at *6 (N.D. Ohio Nov. 6, 2015), *aff'd*, No. 2016-1286, 2016 WL 7156894 (Fed. Cir. Dec. 8, 2016). ("[T]he Court [found] that using a computer to ask for permission before using a locating device [did] not solve a technological problem" and was patent-ineligible abstract idea.). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use,' but they also can be 'done mentally.'" (citation omitted)).

In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610-11; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18

(1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## IV. ARGUMENT

ECT's Amended Complaint should be dismissed. The claims of the Asserted Patent, which are the sole focus of a § 101 analysis,[6] are patent-ineligible under § 101 because they fail both prongs of the *Alice* test. Asserted Claim 11 is directed to the abstract idea of enabling parties to communicate regarding a tracked item. Abstract ideas are not eligible for patenting. Claim 11 contains no "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added).[7] Further, Claim 11 is materially indistinguishable from the claims of the *Eclipse* Patents that were invalidated in *McKinley*. 2014 WL 4407592 at *12. Claim 11 covers a similarly abstract idea, adding only the purported limitations relating to "authentication information." These limitations, however, do not sufficiently distinguish the Asserted Patent from the patents invalidated in *McKinley* for it to be patent eligible. Because ECT has failed to state a claim upon which relief may be granted, Minted respectfully requests that the Court grant its Motion and dismiss this case with prejudice.

### A. Claim 11 fails both *Alice* prongs.

#### 1. *Alice* Step 1: Claim 11 is directed to an abstract idea.

In determining patent eligibility under § 101, the court must first determine whether a claim is directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Here, Claim 11 is directed to the abstract

---

[6] In other words, any purported reliance on the specification is improper when determining patent eligibility—it is the claims that are to be analyzed. *See Alice*, 134 S. Ct. at 2355; *see also Elec. Power Group, LLC v. Alstom S.A.*, 830 F. 3d 1350, 1353 (Fed. Cir. 2016) ("The ***claims*** in this case fall into a familiar class of claims 'directed to' a patent-ineligible concept. . . . We . . . conclude that these ***claims*** focus on an abstract idea—and hence require stage-two analysis under § 101." (emphasis added)); *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998) ("[T]he name of the game is the claim." (citation omitted)).

[7] Moreover, as mentioned herein, all of the un-asserted claims of the Asserted Patent fail for the same reason as they are all directed to the same abstract idea of enabling parties to communicate regarding a tracked item.

idea of enabling parties to communicate regarding tracked items. Indeed, "the focus of the claim[] is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Group*, 830 F.3d at 1354.

The abstract nature of Claim 11 is clear when one focuses on the claim language that remains after stripping out the generic computer "tools" (*i.e.*, the "personal communication device" and "one or more transceivers designed to communicate data; one or more memories; one or more processors; and computer program code stored in the one or more memories and executed by the one or more processors"). Viewing the limitations of Claim 11 of the '261 Patent alongside a conventional analogy in the context of a florist's delivery highlights the abstract nature of the claims:

| **'261 Patent: Claim 11** | |
|---|---|
| **Claim Limitations** | **Conventional Analogy "Delivering Flowers"** |
| "enab[ling] a first party ~~associated with a personal communication device (PCD)~~ to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT)" | A customer calls the florist and provides his order information (*e.g.*, an order number) and indicates that he would like to know when the order is out for delivery |
| "stor[ing] the authentication information" | The florist writes down the order number to be tracked |
| "monitor[ing] location or travel information in connection with the MT" | The florist monitors the status of the order to be tracked (*i.e.*, selection, arrangement, ready for delivery) |
| "caus[ing] initiation of the notification communication session ~~to the PCD~~, in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT" | The florist sends the customer a communication (*e.g.*, a text) when the order is ready to leave the store for delivery |
| "during the notification communication session, provid[ing] the authentication information ~~to the PCD~~ that indicates to the first party that the notification communication session was initiated by an authorized source" | The florist includes the order number in the communication (*e.g.*, the text) to the customer, thus indicating to the customer that this communication (*e.g.*, this text) came from a trusted source (*e.g.*, the florist) |
| "during the notification communication session, enabl[ing] the first party to select whether or not to communicate with a second | The manager includes in the communication to the customer the phone number of the florist's delivery driver so that the customer can contact the driver |

| | |
|---|---|
| party having access to particulars of the pickup or delivery” | |

Accordingly, Claim 11 amounts to nothing more than methods for parties to communicate regarding the status of a tracked item, including allowing a party to confer with another party regarding a tracked item.[8] But enabling parties to communicate regarding tracked items is an abstract idea that can be implemented in a variety of ways, including (as shown above) by a human. The claim is thus directed to patent-ineligible subject matter. *See CyberSource*, 654 F.3d at 1372 (claim for verifying the validity of a credit card transaction over the Internet abstract because the “steps can be performed in the human mind, or by a human using a pen and paper”).

The *MacroPoint* case is instructive. In that case, the patents were directed to “a system for providing location information of a vehicle [that] includes a communications interface and a correlation logic that correlates location information of a communications device to location of the vehicle.” *MacroPoint*, 2015 WL 6870118, at *1 (brackets in original). Although the claims included detailed computer-related limitations that went well beyond those at issue here, the court nevertheless found that they were directed to the abstract idea of “tracking freight”: “the claim discloses nothing more than a process for tracking freight, including monitoring, locating, and communicating regarding the location of the freight. These ideas are all abstract in and of themselves.” *Id.*, at *3 (citation omitted). After finding no inventive concept in the claims’ recitation of “basic and generic computer functions,” including “transmitting” and “receiving” information, the court concluded that the patents were ineligible for patentability and granted the defendant’s motion to dismiss. *Id.*, at *7. Claim 11, which also relates to communicating regarding the location of a tracked item, is even more abstract.[9] It does not even include the various levels of signaling and processing involved in the *MacroPoint* patents. *See id.*

Recent Federal Circuit case law underscores the abstractness of the idea to which the Asserted Patent is drawn. In *Enfish*, for example, the claims at issue were directed to a particular

---

[8] Although not at issue in this case, the remaining independent claims cover systems and methods for performing the same abstract concept.

[9] Minted’s analysis properly follows the Federal Circuit’s guidance in *Amdocs*, which requires litigants pursuing § 101 to compare the purported abstract idea to ideas found to be abstract in other cases. *See Amdocs*, 841 F.3d at 1294 (indicating that, in conducting a § 101

type of "self-referential" database. 822 F.3d at 1338. The court distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claim 11 shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." Therefore, the focus of Claim 11 is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

Indeed, the only "computer related" components recited in Claim 11 are generic and conventional (e.g., "one or more transceivers designed to communicate data; one or more memories; one or more processors; and computer program code stored in the one or more memories and executed by the one or more processors"); all are implemented in a conventional manner with no special programming or algorithm identified. And although the limitations in Claim 11 are preceded by the words "code that," the fact that the alleged invention is accomplished by means of code does not imply that the claimed invention encompasses patent-eligible subject matter:

> Software is a form of language—in essence, a set of instructions. It is inherently abstract because it is merely "an idea without physical embodiment," Given that an "idea" is not patentable, and a generic computer is "beside the point" in the eligibility analysis, all software implemented on a standard computer should be deemed categorically outside the bounds of section 101.
>
> . . .
>
> In the section 101 calculus, **adding software** (which is as abstract as language) **to a conventional computer (**which rightfully resides in the public domain) **results in a patent eligibility score of zero.**

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1325 (Fed. Cir. 2016) (Mayer, J. concurring) (emphasis added, internal citations omitted). Thus, the inclusion of the word "code" in Claim 11 does not save it from failing the *Alice* step 1 analysis.

Moreover, Claim 11 is materially indistinguishable from the claims of the *Eclipse* Patents that were found ineligible in *McKinley*. For example, the following (slightly reordered)

---

analysis, a court should "examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided").

comparison of Claim 11 to claim 41 of the ’716 Patent shows the two to be directed to essentially the same abstract idea in essentially the same manner:

| Claim 41 of Invalidated ’716 Patent | Claim 11 of ’261 Patent |
|---|---|
| A method for communications in connection with a computer-based notification system, comprising the steps of: | An automated notification system, comprising:<br>one or more transceivers designed to communicate data;<br>one or more memories;<br>one or more processors; and<br>computer program code stored in the one or more memories and executed by the one or more processors, the computer program code comprising: |
| monitoring travel data associated with a mobile thing; | code that monitors location or travel information in connection with the MT;<br>code that causes initiation of the notification communication session to the PCD with the one or more transceivers, in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT; |
| initiating a first notification communication to a personal communications device associate [sic] with a party based upon the relationship of the mobile thing to a location; | code that enables a first party associated with a personal communication device (PCD) to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT);<br>code that causes storage of the authentication information; |
| receiving a response communication from the party’s personal communications device; | code that, during the notification communication session, provides the authentication information to the PCD that indicates to the first party that the notification communication session was initiated by an authorized source; and |

| | |
|---|---|
| refraining from sending notification communications to the party's personal communications device after receiving the response communication; and initiating a second notification communication to the party's personal communications device, one or more other personal communications devices, or both, based upon the upon the [sic] relationship of the mobile thing or another mobile thing to the location or another location. | code that, during the notification communication session, enables the first party to select whether or not to engage in a communication session with a second party having access to particulars of the pickup or delivery. |

Like Claim 11, claim 41 of the '716 Patent includes limitations to: (1) monitor travel data associated with a mobile thing; (2) initiate a first notification communication to a PCD; and (3) initiate a second notification to a PCD based upon the location of the tracked item. The *McKinley* court easily likened the *Eclipse* claim to human activity, finding the addition of conventional computer-related functionality "irrelevant":

> In the above example, this just adds Ted looking outside to see whether the trash can is now out at the curb. Or, the hotel calling the room to let a guest know that the bags have not yet arrived, and then calling again once they have. Or that the car is now at the valet stand. Again, the fact that the claim calls for this to be done "in connection with a computer-based notification system" is irrelevant.

*McKinley*, 2014 WL 4407592, at *10. Claim 11's inclusion of limitations relating to "authentication information" does not render it any less abstract than claim 41. Indeed, it is not hard to envision that the hotel guest in the *McKinley* court's analogy above could assume that the call received was "authentic" when viewing the caller ID (e.g., "Front Desk") on the hotel room's phone. As was the case in *McKinley*, the broad concept of enabling parties to communicate regarding tracked items is patent ineligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. And because Claim 11 is materially indistinguishable from the *Eclipse* Patents—save the additional limitation relating to "authentication information" (which in itself is abstract for the reasons discussed)—the claimed process is just as undeserving of protection.

Indeed, the overbreadth of Claim 11 raises "the pre-emption concern that undergirds [the] § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358. Importantly, the pre-emption concern is not whether a claim fully preempts all manner of achieving an abstract idea, but rather requires a balancing of how much "future innovation is foreclosed relative to the ***contribution*** of the

***inventor***." *Mayo*, 132 S. Ct. at 1303 (emphasis added). Here, Claim 11 broadly preempts the abstract idea of allowing a party to choose to communicate with another party with respect to the tracking of a mobile thing. Meanwhile, the Asserted Patent's inventor's contribution is little, if anything: the applicants merely applied the use of conventional computer components and software code to the idea itself. Upholding Claim 11's eligibility would thus "risk disproportionately tying up the use of the underlying' conventional steps." *MacroPoint*, 2015 WL 6870118, at *7 (quoting *Mayo*, 132 S. Ct. at 1294); *see also id.* ("Plaintiff also argues that its patents do not preempt the field of 'tracking freight' . . . . Again, this Court disagrees. Although the patents-in-suit do not entirely foreclose all tracking of freight, the steps in the claimed invention do involve 'well-understood, routine, conventional activity.'"). Accordingly, Claim 11 is directed to a patent-ineligible abstract idea under *Alice* step 1.[10]

**2. *Alice* Step 2: Claim 11 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Because Claim 11 is directed to an abstract idea, the Court must next determine whether the claim contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 11 "must include additional features" that are "more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotations and citations omitted). Here, Claim 11 includes no inventive concept or meaningful limitations that would render it patent-eligible. *McKinley*, 2014 WL 4407592, at *7 (finding that ECT's claims capture an abstract concept "without any 'inventive concept' or other limiting principle"). Indeed, the stated problem the Asserted Patent purports to solve is simply "to know, with substantial accuracy, the expected arrival or departure time of a" mobile vehicle or "thing," a concept that is far from inventive. '261 Patent at 1:55-58.

The lack of inventive concept is underscored by the Asserted Patent's description (and depiction) of only off-the-shelf computer components that perform conventional tasks in a conventional manner to implement the abstract idea. *See, e.g.*, '261 Patent at Fig. 2 (depicting a generic interface connected to generic components, including "input device," "display," "disk,"

---

[10] The other independent claims of the Asserted Patent fail for the same reason—they are materially indistinguishable from the *Eclipse* Patents under both *Alice* prongs.

"printer," "sensor," and "processing element"); *see Elec. Power Group*, 830 F.3d at 1355 (holding that the claimed invention "fail[ed] to meet the standard for patent eligibility under § 101," 1356, when "[n]othing in the claims, understood in light of the specification, require[d] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information"); *In re Bill of Lading*, No. 1:09-md-2050, 2016 WL 4505767, *3 (S.D. Ohio Aug. 29, 2016, Order) (noting that the claimed patent-ineligible method "simply use[d] available technology, performing its standard functions, to execute the abstract idea of getting shipping information to load planners faster").

Notably, the *McKinley* court discussed the broad sweeping nature of the specification when invalidating the related *Eclipse* Patents. In particular, it recognized that "[t]he specification teaches in one place that a personal communications device is a broad category that includes telephones, pagers, computers, and personal data assistants." *McKinley*, 2014 WL 4407592, at *6. The court also pointed out that "in another [place], the specification is even more expressly sweeping":

> Nonlimiting examples of PCDs are as follows: a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (*e.g.*, cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of user perceptible emission.

*Id.* at *7 (quoting the specification of the *Eclipse* Patents). The Asserted Patent includes the same sweeping statements and thus has the same issues identified by the court in *McKinley*. '261 Patent at 19:35-42. Therefore, like the *Eclipse* Patents, it also lacks any inventive concept.

The mere automation and efficiency permitted by performing the claimed abstract idea on a generic computer does not bring the claims into the realm of eligibility. *Alice*, 134 S. Ct. at 2358; *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00951-LED, 2014 WL 923280, at *4 (E.D. Tex. Jan. 21, 2014); *In re Bill of Lading*, 2016 WL 4505767, *3 ("The fact that the execution of the abstract idea can be carried out more efficiently through the use of technology does not mean that the patent covers eligible subject matter."); *Intellectual Ventures I*, 838 F.3d at 1315 ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept"). The Asserted Patent merely claims the task of communicating regarding a tracked item and adds some "apply it" language: namely, the use of a generic computer system to perform the

claimed processes. To be sure, the asserted claims' recitation of "computer-based" systems, "a processor," a "personal communication device," and "a memory" is not functionally different from reciting just a "computer" because such components are not "new machinery." *SmartGene, Inc. v. Advanced Biological Labs, SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014). As the *McKinley* court stated in invalidating the *Eclipse* patents, "even if [the inventor] was the first to discover the idea that you could use a computer system and a telephone to ask people whether they wanted to perform a task, those devices are generic and ubiquitous, and in the modern world, reciting them does not overcome the abstractness problem." *McKinley*, 2014 WL 4407592, at *8.

Claim 11 differs significantly from the claims of patents that the Federal Circuit has upheld as patent eligible. Claim 11 does not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), by improving "the way a computer stores and retrieves data in memory," *Enfish*, 822 F.3d at 1339, or by improving "scalability and efficiency" of an accounting records system, *Amdocs*, 841 F.3d at 1303. Rather, Claim 11 contains no restrictions on how to implement the idea. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming invalidity where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation"). It is therefore patent-ineligible. Limiting the elements of Claim 11 to the shipping and delivery business also does not make it patentable. *Elec. Power Group*, 830 F. 3d at 1354 ("[L]imiting the claims to the particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core."); Dkt. No. 23, Amended Complaint, at 3 ¶ 11 ("Providing customer verifiable information within shipment and order confirmations helps to stop or at least reduce fraud associated with the illegal mimicking of order and shipment confirmation emails.").

When the "insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (quoting *Bancorp*, 687 F.3d at 1279 (holding claims patent-ineligible even when the specification "contains very detailed software implementation guidelines" because "the system claims themselves only contain generalized software components arranged to implement

an abstract concept on a computer”)). In this case, all that is left once the off-the-shelf components (that operate in a conventional way) are stripped away is the abstract idea of enabling parties to communicate regarding tracked items.

Claim 11 recites an abstraction or idea having no particular concrete or tangible form. Without any meaningful limitations, Claim 11 preempts the abstract idea of enabling parties to communicate regarding tracked items and violates “the longstanding rule that ‘[a]n idea of itself is not patentable.’” *Benson*, 409 U.S. at 67 (quotation omitted). Claim 11 thus fails *Alice’s* second prong.

#### 3. Claim 11 is patent-ineligible regardless of when the Asserted Patent issued.

The fact that the ’261 Patent issued after *Alice* does not alter the conclusion that it is patent-eligible under the *Alice* test. *See, e.g.*, *Collarity, Inc. v. Google Inc.*, C.A. No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015, Order) (rejecting patent owner’s argument that the asserted patent should not be found invalid under § 101 because the USPTO issued a related patent after the *Alice* decision and noting that “[w]hether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law [by the district court] in establishing the validity of the patent” (alteration in original, quotation omitted)); *see also MacroPoint*, 2015 WL 6870118, at *3 (“Contrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not mandate a finding that the patents are valid.”); *see also Zimmers v. Eaton Corp.*, No. 2:15-CV-2398, 2016 WL 4094870, *4 (S.D. Ohio Aug. 2, 2016) (granting judgment on the pleadings that patents issued post-*Alice* were patent-ineligible under § 101).

## V. CONCLUSION

Because the Asserted Patent’s claims do not embrace patentable subject matter under § 101, Minted respectfully requests that the Court dismiss this case with prejudice for failure to state a claim upon which relief can be granted.

Dated: January 3, 2017

Respectfully submitted,

By: */s/ Eleanor T. Barnett*

Eleanor T. Barnett, Esq.
Florida Bar No. 0355630
Heller Waldman P.L.
3250 Mary Street, Suite 102
Coconut Grove, FL 33133
Phone: 305-448-4144
Fax: 305-448-4155
ebarnett@hellerwaldman.com;
liteservice@hellerwaldman.com;
ncuriel@hellerwaldman.com

Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rjb@fr.com
Texas Bar No. 24082704
Theresa M. Dawson
tdawson@fr.com
Texas Bar No. 24065128

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**COUNSEL FOR DEFENDANT MINTED, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 3, 2017, per Local Rule CV-5.2(a).

*/s/ Eleanor T. Barnett*
Eleanor T. Barnett, Esq.