**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:16-cv-81669-KAM**

**Judge Kenneth A. Marra**

| | |
|---|---|
| **ELECTRONIC COMMUNICATION TECHNOLOGIES, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MINTED, LLC,**<br>**Defendant.** | **PATENT CASE**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MINTED, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Asserted Claim 11 of the '261 Patent is patent-ineligible for many of the same reasons a California district court found claims from its sister patents to be ineligible. ECT's response raises myriad procedural issues that have no merit or that have no bearing on the § 101 analysis and altogether fails to respond to Minted's substantive challenges to the Asserted Claim. ECT does not raise any genuine fact or claim construction issues that would render Minted's motion procedurally improper, and it does not provide a substantive distinction between its Asserted Claim here and the claims invalidated in California. Additionally, that the '261 Patent issued post-*Alice* does not save it from ineligibility. The Asserted Claim is directed to an abstract idea applied using generic computer components and code in a conventional manner. There is no improvement to technology or inventive concept captured by the claim. Accordingly, ECT's Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## I. MINTED'S MOTION TO DISMISS THE AMENDED COMPLAINT WAS PROCEDURALLY PROPER.

Minted properly filed its motion to dismiss the Amended Complaint because the Amended Complaint rendered Minted's original motion moot. Contrary to ECT's contention, ECT and Minted never agreed that Minted would only reply to ECT's response to Minted's motion to dismiss the original complaint instead of Minted filing a new motion to dismiss the amended complaint.[1] Any such agreement would have been procedurally improper because ECT's Amended Complaint mooted Minted's original motion. *New York Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1409 (M.D. Ga. 2014) (Because an amended complaint supersedes the original complaint, "motions directed at the superseded pleading generally are to be denied as moot.") (quotation omitted); *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint."); *Trimble v. U.S. Soc. Sec.*, 369 Fed. Appx. 27, 29 (11th Cir. 2010). Accordingly, filing a new motion was the appropriate response because the complaint Minted initially moved to dismiss became inoperative by virtue of ECT's Amended Complaint. *See id.* If ECT wanted to avoid a new motion, it could have just dropped the other patents it originally asserted instead of filing an Amended Complaint.

ECT's contention that Minted waived any arguments it did not raise in the original motion to dismiss is meritless. As an initial matter, Minted does not raise new arguments but rather has directed its argument to the single claim asserted before the Court. Additionally, under the Federal

[1] Moreover, contrary to ECT's contention (Opp. at 2-3), Minted did not forego its right to respond accordingly to the Amended Complaint. Indeed, at the time the parties negotiated the briefing deadlines for the initial motion to dismiss, ECT had not yet amended its Complaint and Minted requested the additional time expecting that ECT might drop the asserted patents via its opposition to Minted's motion instead of filing an entirely new Amended Complaint.

Rules, ECT's Amended Complaint supersedes the original complaint, and Minted was therefore entitled to respond to the Amended Complaint anew, as if the original complaint never existed. *See* Fed. R. Civ. P. 15(a)(3); *Fritz*, 676 F.2d at 1358. The cases cited by ECT are distinguishable. In *Noveshen v. Bridgewater Associations, LP*, the defendant sought to raise an entirely new defense based on lack of personal jurisdiction, a defense that the Federal Rules expressly require be raised in any initial response or it is waived. No. 13-cv-61535, 2015 WL 11170928, at *2-3 (S.D. Fl. July 20, 2015) (Marra, J.). *Noveshen* does not stand for the proposition that a defendant cannot raise any arguments not raised in an initial 12(b) motion if the defendant re-asserts that defense against an amended complaint. *See id.* Here, Minted is not raising a new defense but is re-asserting the same 12(b) defense it raised initially. ECT offers no basis to bar Minted from doing so. *See also F.L.B. v. Lynch*, 180 F. Supp. 3d 811, 816 (W.D. Wash. 2016) (finding defendant had waived the right to assert 12(b) ***defenses*** not originally raised in response to a complaint, but not waiving new ***argument***).

## II. LEGAL STANDARD

### A. Facts in the amended complaint are presumed true; however, conclusions of law are not presumed true.

ECT's reliance on the presumed truth of the facts it alleges in the Amended Complaint is misplaced. Factual allegations in a complaint are presumed true; however, legal conclusions are given no deference—legal conclusions are left for the Court to decide. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). ECT's Amended Complaint contains various conclusions of law that are not to be taken as true lest a plaintiff could circumvent the federal pleading rules by pleading nothing but legal conclusions. As one court recently explained, "[r]equiring the Court to accept such facts or legal conclusions . . .

would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention." *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-1416RAJ, 2016 WL 3906905, at *6, n.6 (W.D. Wash. July 19, 2016). The presumption of truth accorded to ECT's well-pleaded ***facts*** thus does not save it from 12(b)(6) scrutiny.

**B. The burden of proof is irrelevant because patent-eligibility is a threshold legal issue and ECT raises no factual issues.**

ECT's procedural protests to Minted's motion also fall flat. First, where, as here, there are no factual issues, the burden of proof does not apply because subject-matter eligibility is a matter of law. Second, claim construction is not necessary because ECT raises no claim construction issues that would affect the § 101 analysis. Third, the presumption of validity does not apply to the patent subject-matter eligibility analysis. Accordingly, the Court can and should address the § 101 issue at this early stage of the case to avoid potentially wasting the parties' and the Court's resources litigating over an ineligible patent claim.

**1. The burden of proof is irrelevant to the analysis of whether the Asserted Patent is directed to patent-ineligible subject matter.**

ECT erroneously contends that burden of proof is relevant to the subject-matter ineligibility analysis. Subject-matter eligibility under § 101 is a matter of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). The burden of proof applicable to factual issues is irrelevant to questions of law. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring) ("I believe it worth emphasizing that in this area of law as in others ***the evidentiary standard of proof applies to questions of fact and not to questions of law.***") (emphasis added). Had ECT raised factual issues, there might exist mixed questions of fact and law to which the clear-and-convincing standard of proof would be relevant. But ECT has not raised any factual issues. Therefore, the burden of proof is irrelevant to this analysis. *Berkheimer v. Hewlett-Packard Co.*, No. 12 C 9023,

2016 WL 7188159, at *4 (N.D. Ill. Dec. 12, 2016, Memorandum Opinion and Order) ("Having considered the positions on both sides of this issue, the Court is persuaded that the clear-and-convincing standard has no role to play in the § 101 determination at issue in this case"); *see also Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, *2 (D. Del. Sept. 30, 2015, Report and Recommendation) ("And as to the instant Motions, filed at the pleading stage (a stage at which any facts that might be in dispute are to be construed in the light most favorable to the plaintiff), the 'clear and convincing' standard of proof should not come into play at all.").

**2. ECT does not raise any claim construction issues that would affect the § 101 analysis.**

Claim construction is not required to conduct a § 101 analysis. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."). ECT states that claim construction is necessary, but fails to point to any terms that require construction or to terms having constructions that would change the § 101 inquiry. ECT points to large swaths of the specification to allege that Minted is improperly construing the claims, but this tactic has two failings. First, the specification is not the text sought to be patent-eligible—the claims are. *See Alice*, 134 S. Ct. at 2355 & n.3; *Clear With Computers, LLC v. Dick's Sporting Goods, Inc.*, 2014 WL 923280, at *5 (E.D. Tex. Jan. 21, 2014) ("CWC's argument, however, misplaces the focus of the eligibility analysis on the specification rather than the claims."). Second, ECT cites the specification to support its unfounded contention that the claim requires a "special purpose computer"—but this contention is actually contradicted by the specification, which notes that the claimed components are generic devices used in their conventional manner. (*See* Dkt. No. 29 at 4 (discussing the generic nature of the claimed

components).) Therefore, no claim construction would save the Asserted Claim from ineligibility. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (holding court may address § 101 at pleading stage by construing claims in manner most favorable to patentee).

**3. The presumption of validity is inapplicable to the subject-matter eligibility analysis.**

Finally, the presumption of validity applies to ***validity*** issues, not to ***eligibility*** issues. *Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016). Validity and eligibility are two separate inquiries. *Id.* ("To be clear: ruling these claims to be ***patent-eligible*** does not mean that they are ***valid***; they have yet to be tested under the statutory conditions for patentability, *e.g.*, §§ 102 (novelty) and 103 (non-obvious subject matter), and the requirements of § 112 (written description and enablement) . . . ." (emphasis added)). In other words, to be valid, a patent must, *inter alia*, satisfy the requirements of §§ 102, 103, and 112. *Id.* The eligibility inquiry, however, focuses on whether the patent is directed to eligible subject matter. Therefore, claims may be patent-eligible while still being invalid for failing one of the statutory conditions for patentability, just as claims that may be valid under the validity sections may be directed to (and claim) patent-ineligible subject matter. Indeed, the Supreme Court has underlined the difference between validity and eligibility:

> Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. The question therefore of whether a particular invention is novel is ***wholly apart from whether the invention falls in a category of statutory subject matter***.

*Diamond v. Diehr*, 450 U.S. 175, 189-90 (1981) (emphasis added) (quotation, internal citation omitted). Patents are not presumed eligible. *See generally Alice*, 134 S. Ct. 2347 (not mentioning the existence of a presumption of eligibility); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d

709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) ("The reasonable inference . . . is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.") (citation omitted).

## III. THE ASSERTED PATENT IS DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER.

### A. ECT does not effectively differentiate the *McKinley* patents from the Asserted Patent.

ECT fails to effectively distinguish the '261 Patent from the patents that the court in *Eclipse IP, LLC v. McKinley Equip. Corp.*, No. 8:14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014), determined were directed to patent-ineligible subject matter because it cannot. ECT's discussion centers on the "computer code." However, computer code is not enough to take a claim out of the realm of subject-matter ineligibility. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1325 (Fed. Cir. 2016) (Mayer, J. concurring) ("Software is a form of language—in essence, a set of instructions. It is inherently abstract . . . . In the section 101 calculus, ***adding software*** (which is as abstract as language) ***to a conventional computer*** (which rightfully resides in the public domain) ***results in a patent eligibility score of zero***." (emphasis added, citations omitted)). The only substantive difference between the Asserted Claim here and the ineligible claims from the *McKinley* patents is the computer code.

ECT's reliance on *McRo*, *Bascom*, and *Enfish* is similarly misplaced. Those cases involved claims that were directed to specific improvements to computer technology. The correct inquiry, as established by those cases, is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). The Asserted Claim's focus is on the latter: it is directed to the abstract idea of "preventing phishing," in ECT's words, and merely invokes computer components

and code to practice the claimed process. It does not recite an improvement to how the components are interconnected, how they are used, or how they are coded to perform some unconventional or inventive function. If it did, the § 101 inquiry might be a closer question. Rather, it simply claims the idea itself and adds some "apply it with a computer" language. *See Alice*, 134 S. Ct. at 2358. The Asserted Claim is thus materially indistinguishable from the patents in *McKinley*, and consequently also encompasses patent-ineligible subject matter.

**B. Preemption concerns weigh in favor of a finding that the Asserted Claim is directed to patent-ineligible subject matter.**

The Asserted Claim's overbreadth raises "the pre-emption concern that undergirds [the] § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358. Importantly, the preemption concern is not whether a claim fully preempts all manner of achieving an abstract idea, but rather requires a balancing of how much "future innovation is foreclosed relative to the ***contribution*** of the ***inventor***." *Mayo*, 132 S. Ct. at 1303 (emphasis added). The applicants here contributed little to the field because they merely applied the use of conventional computer components and software code to the broad abstract idea of allowing a party to choose to communicate with another party regarding the tracking of a mobile thing. On the other side of the balancing scale, the Asserted Claim disproportionately preempts the field of "preventing phishing," as ECT puts it.

Upholding Claim 11's eligibility would thus "risk disproportionately tying up the use of the underlying' conventional steps." *MacroPoint*, 2015 WL 6870118, at *7 (quoting *Mayo*, 132 S. Ct. at 1294); *see also id.* ("Although the patents-in-suit do not entirely foreclose all tracking of freight, the steps in the claimed invention do involve 'well-understood, routine, conventional activity.'"). Accordingly, Claim 11 is directed to a patent-ineligible abstract idea.

### C. The Asserted Patent's issuance post-*Alice* does not save it from an attack on the patent-ineligibility of its subject matter.

Claim 11 is patent-ineligible regardless of when the Asserted Patent issued. The fact that the '261 Patent issued after *Alice* does not alter the conclusion that it is patent-ineligible under the *Alice* test. *See, e.g.*, *Collarity, Inc. v. Google Inc.*, C.A. No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015, Order) (rejecting patent owner's argument that the asserted patent should not be found invalid under § 101 because the USPTO issued a related patent after the *Alice* decision and noting that "[w]hether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law [by the district court] in establishing the validity of the patent" (alteration in original, quotation omitted)); *see also MacroPoint*, 2015 WL 6870118, at *3 ("Contrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not mandate a finding that the patents are valid."); *see also Zimmers v. Eaton Corp.*, No. 2:15-CV-2398, 2016 WL 4094870, *4 (S.D. Ohio Aug. 2, 2016) (granting judgment on the pleadings that patents issued post-*Alice* were patent-ineligible under § 101). The claim must be analyzed by the Court under the appropriate § 101 jurisprudence, and through those lens, it is clear the Asserted Claim is patent-ineligible. Minted therefore respectfully requests that the Court grant its motion.

## IV. CONCLUSION

For the foregoing reasons, Minted respectfully requests that the Court grant its Motion and dismiss this case with prejudice.

Dated: January 17, 2017

Respectfully submitted,

By: */s/ Eleanor T. Barnett*

Eleanor T. Barnett, Esq.
Florida Bar No. 0355630
Heller Waldman P.L.
3250 Mary Street, Suite 102
Coconut Grove, FL 33133
Phone: 305-448-4144
Fax: 305-448-4155
ebarnett@hellerwaldman.com;
liteservice@hellerwaldman.com;
ncuriel@hellerwaldman.com

Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rjb@fr.com
Texas Bar No. 24082704
Theresa M. Dawson
tdawson@fr.com
Texas Bar No. 24065128

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**COUNSEL FOR DEFENDANT MINTED, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 17, 2017, per Local Rule CV-5.2(a).

*/s/ Eleanor T. Barnett*
Eleanor T. Barnett, Esq.